UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | 18 CR 868 |
| v. ) | Honorable Charles R. Norgle Sr. |
| ) | |
| EDMUND SINGLETON, ) | |
|     Defendant. ) | |

### EDMUND SINGLETON'S SENTENCING MEMORANDUM

NOW COMES the defendant, EDMUND SINGLETON ("Mr. Singleton"), by and through his attorney, QUINN A. MICHAELIS, and respectfully request, pursuant to 18 U.S.C. § 3353(a) and *United States v. Booker* 543 U.S. 220 (2005), and its progeny, that this Honorable Court impose a sentence of time served (22 months). In support of this request, Mr. Singleton states as follows:

    I.    OBJECTIONS TO THE GUIDELINE CALCULATION

        a. The Offense Level

The PSR calculates Mr. Singleton's base offense level as 20, because the defendant committed the instant offense after sustaining one felony conviction for a crime of violence, specifically his 2008 conviction for Aggravated Battery. (PSR at 22). Pursuant to USSG 2K2.1(b)(6)(B), the PSR adds an additional 4 points because probation determined that the firearm possessed was used in connection with another felony offense—namely the possession of 80 grams of marijuana at the time of his arrest. Mr. Singleton objects to this enhancement because possession of less than 100 grams of marijuana is a misdemeanor in the state of Illinois, and

distribution of a "small amount" of marijuana is also a misdemeanor at the federal level.

Specifically, USSG 2K2.1(b)(6)(B) states that a defendant's offense level should be increased "if the defendant…used or possessed any firearm or ammunition in connection with another *felony* offense." (emphasis added). Under 21 U.S.C. §841(b)(4), 844, "any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title, and section 3607 of title 18." In other words, distributing a "small amount" of marijuana for no remuneration shall be treated as a simple possession, under 21 U.S.C. §844. A conviction under 21 U.S.C. §844 carries a maximum penalty of up to one year in custody, making such offense a misdemeanor offense, as defined by the sentencing guidelines: "'felony offense' means any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentence imposed." USSG §4A1.1(o).

There is no statutory definition of "small amount." According to the PSR, and admitted to in the plea agreement, at the time of his arrest, Mr. Singleton was found in possession of 80 grams of marijuana. Under Illinois law, possession of more than 30 grams but less than 100 grams of marihuana is a misdemeanor offense. 720 ILCS 550/4(c). Because the Illinois statutes treat possession of less than 100 grams of marijuana as a misdemeanor, Mr. Singleton suggests that 100

grams of marijuana be used as the upper bounds of what a "small amount" of marijuana is for federal purposes.

Furthermore, although the plea agreement states that Mr. Singleton "intended to deliver" the marijuana, the PSR notes that he planned to "supply" his friend's birthday party (PSR at 16) and neither the PSR, nor the plea agreement states that he planned to supply that party for remuneration. The focus of the analysis for determining if Mr. Singleton committed a felony or misdemeanor for purposes of the 4-point enhancement should be on whether there is evidence that Mr. Singleton received remuneration for the marijuana. Since the marijuana was never actually distributed, because it was still found in Mr. Singleton's possession at the time of his arrest, that conduct does not rise to a federal felony, and thus cannot be used as the basis for the 4-point enhancement under USSG § 2K2.1(b)(6)(B).

The resulting total offense level, after timely acceptance of responsibility is 17.

### b. Criminal History Calculation

Mr. Singleton agrees with the probation office's assessment that his 2012 conviction for aggravated unlawful use of a weapon is not countable because that conviction is now unconstitutional under *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), *People v. Aguilar*, 2 N.E.3d 321 (Ill. 2013). (PSR at 39).

Mr. Singleton objects to the inclusion of one criminal history point for his 2009 conviction for reckless conduct. (PSR at 38). Under USSG §4A1.2(c)(1) certain

prior misdemeanor offenses are only counted if they are similar to those listed in the subsection and "the sentence was a term of probation of more than a year or a term of imprisonment of at least thirty days." Among the listed offense that are only countable if the sentence is a term of a year or more of probation or imprisonment of at least thirty days is disorderly conduct. U.S.S.G. 4A1.2(c)

Courts are directed to consider 5 factors in determining whether a particular conviction should be excluded or included in the criminal history calculation based on their similarity to the enumerated offenses of §4A1.2(c):

> (i) Comparison of the punishments imposed for the listed and unlisted offense;
> (ii) The perceived seriousness of the offense as indicated by the level of punishment;
> (iii) The elements of the offense;
> (iv) The level of culpability involved; and
> (v) The degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G §4A1.2(c), Note 12(A).

The offense of disorderly conduct as it relates to federal parklands, is defined as " with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts: (1)Engages in fighting or threatening, or in violent behavior. 36 CFR § 2.34. The penalty for disorderly conduct on federal land is not more than 6 months imprisonment. 18 U.S.C. §1865.

Similarly, to be found guilty of disorderly conduct within "Indian country," a person, "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof…(1) engages in fighting or threatening, or in

violent or tumultuous behavior." 25 CFR §11.441. The penalty for such an offense is a "petty misdemeanor."

The model penal code mirrors the language of the two above referenced definitions of disorderly conduct: "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof; he…(a) engages in fighting or threatening, or in a violent or tumultuous behavior." Model Penal Code §250.2

In Illinois, "a person commits reckless conduct when he or she, by any means lawful of unlawful, recklessly performs an act or acts that (1) causes bodily harm to or endangers the safety of another person." 720 ILCS 5/12-5(a). Reckless conduct under subsection (a)(1) is a class A misdemeanor, punishable by up to a year incarceration.

All of the disorderly conduct offenses at the federal level appear to criminalize the act of fighting or engaging in violent behavior, which is within the class of conduct that is "causing bodily harm to or endangering the safety of another person" prohibited by the Illinois reckless conduct statute. The Illinois Reckless conduct statute provides for a harsher penalty than the federal statutes, however all the statutes punish the same conduct, and all involve the same level of culpability. As such, Mr. Singleton should receive no criminal history points for this conviction because it is "similar to" the offense of disorderly conduct and is not countable because the sentence he received for that conviction was less than 60 days.

Mr. Singleton's resulting criminal points equals 3 points, placing him in criminal history category II. The resulting sentencing range is thus 27-33 months.

## II. A SENTENCE OF TIME SERVED WOULD BEST SATISFY THE GOALS OF 18 U.S.C. § 3553(a).

The Court must impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2), " which are "the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

It is clear from the PSR that Mr. Singleton has been surrounded by poverty and violence since his early childhood. He described living "in poverty in neighborhoods where gun violence was routine." (PSR at 68). Not only has Mr. Singleton been shot, but his mother and brother were also victims of gun violence. (PSR at 68). He has witnessed many shootings, including his friend who was shot in the eye while they were in a car together. (PSR at 80). The trauma of all of this violence was compounded by the death of his father in 2017. As stated by the PSR,

Mr. Singleton was the one who found his father in his home after his death. (PSR at 80). As a result of the constant violence and loss surrounding Mr. Singleton, he appears to be suffering from ongoing anxiety and nightmares that have not received any treatment.

It would seem at odds for someone who has been repeatedly traumatized by gun violence to then carry such a destructive weapon on him. However, Mr. Singleton's traumatic past, as well as his criminal history puts him in a unique position to speak to others about the dangers of gun violence. Before his father's death, Mr. Singleton was working as a public speaker for Ceasefire/Safer (PSR at 86). He has a unique opportunity now to use his experiences with the criminal justice system to speak to others and educate them about gun violence.

    a. The Need for medical care.

The sentence imposed must ensure that "needed . . . medical care" is provided "in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The United States Sentencing Commission now recognizes that "[p]physical condition . . . may be relevant in determining whether a departure is warranted," and has always recognized that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." USSG § 5H1.4, p.s. (2010). Furthermore, under 18 U.S.C. § 3553(a), judges are authorized to consider a defendant's medical condition, despite the Guideline's discouragement of chapter 5 departures.

As is evidenced by the past half a year of COVID-19 pandemic, The Bureau of Prisons often fails to provide adequate medical treatment and prevention of the spread of COVID-19 within their facilities.

The PSR notes that Mr. Singleton "reported suffering from asthma as a child and using a prescription rescue inhaler…he stated that was hospitalized approximately four times as a child for asthma attacks. He currently does not need to use an inhaler." According to records supplied by the MCC, Mr. Singleton has had asthma since childhood and has been prescribed an albuterol inhaler to be used as needed. (See attached records)

Although more study is required, it appears that individuals who suffer from non-allergic asthma are at greater risk for suffering the worst effects of COVID-19 because they have increased levels of ACE2 receptors in their lungs.[1] ACE2 receptors are the gateway that allows COVID-19 to enter into the body's cells, including the lungs.

Mr. Singleton is not currently infected with COVID-19, the court should still consider the current global health crisis and its effect on the Bureau of Prisons when deciding the appropriate sentence here. It is well documented that viruses such as COVID-19 are very difficult to control in a prison setting due to crowded, confined spaces, and the reduced ability of inmates to social distance. As several courts have acknowledged, citing experts including the Center for Disease Control and

---

[1] Does Asthma Increase Covid-19 Risk? Emerging Research Suggests a Complicated Connection. STAT available at: https://www.statnews.com/2020/07/02/asthma-covid19-connection-research/ (last visited Nov 2, 2020.

Prevention ("CDC"), "correctional and detention facilities 'present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors.'" United States v. Kennedy, Case No. 18-20315, Case No. 2020 WL 1493481 at *2 (E.D. Mich. Mar. 27 2020) (quoting CDC, "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities") (Mar. 23, 2020)). "These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing)." Id. Because of the unique strains the pandemic has placed on the Bureau of Prisons, the Attorney General issued a Memorandum to the BOP encouraging transfer of inmates to home confinement where appropriate.[2]

### III. CONCLUSION

For the foregoing reasons, EDMUD SINGLETON respectfully submits that a sentence of time served (which equals 22 months since the date of his arrest on December 19, 2018) is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

Respectfully Submitted,

s/ Quinn A. Michaelis
Quinn A. Michaelis
Attorney for EDMUND SINGLETON
73 W. Monroe, Suite 106
Chicago, IL 60603
312-714-6920

---

[2] See Office of The Attorney General, Memorandum For Director of Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" available at: https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited Nov 2, 2020)

## CERTIFICATE OF SERVICE

I, Quinn A. Michaelis, an attorney, certify that in accordance with Fed. R. Crim. P. 49, Fed R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filings (ECF), the following document:

EDMUND SINGLETON SENTENCING MEMORANDUM

was served on October 29, 2020, to all parties of record via the CM/ECF system.

s/ Quinn A. Michaelis

Quinn A. Michaelis

Attorney for EDMUND SINGLETON
73 W. Monroe, Suite 106
Chicago, IL 60603
312-714-6920